E-FILED
Thursday, 08 August, 2019 02:48:04 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JACQUES GHOLSTON, ) <br> ) <br> Defendant. ) | Case No. 18-30039 |

OPINION

RICHARD MILLS, United States District Judge:

Defendant Jacques Gholston has filed a motion to suppress.

The motion to suppress was referred to the magistrate judge for a hearing and Report and Recommendation.

In the Report and Recommendation, United States Magistrate Judge Tom Schanzle-Haskins recommends that the motion to suppress be denied.

The Defendant has filed objections to the Report and Recommendation.

The Court has reviewed the record, including the transcript of the motion hearing before Judge Schanzle-Haskins.

I. BACKGROUND

On April 29, 2018, Quincy, Illinois Police Officer Erik Cowick arrested Defendant Jacques Gholston when he and other officers found methamphetamine in

1

a truck following a traffic stop of the Defendant. On July 10, 2018, the Defendant was charged by Indictment with one count of possession of 5 grams or more of methamphetamine (actual), with intent to distribute, in violation of 18 U.S.C. § 841(b)(1)(B).

On September 18, 2018, the Defendant filed a motion to suppress. On March 25 and 26, 2019, the Court held a hearing on the motion. A transcript of the hearing was filed and the parties have submitted post-hearing memoranda.

In the Report and Recommendation, the magistrate judge found that "Officer Cowick may have extended the stop for a minute or two beyond the time needed to conduct the traffic stop." Doc. No. 27, at 17. He then noted the Court "does not need to decide whether Officer Cowick unreasonably delayed completing the traffic stop because Officer Cowick had reasonable suspicion based on articulable facts that Gholston was distributing methamphetamine from the Truck." *Id.* at 18. Accordingly, the magistrate judge found that Officer Cowick had a proper basis to detain the Defendant until Deputy Saalborn arrived and the K-9 alerted on the Truck.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

The Court notes that Defendant does not object to the summary of facts contained in the Report and Recommendation. Accordingly, the Court will only recite those facts that are pertinent to its conclusion.

## II. DISCUSSION

What begins as a lawful traffic stop might violate the Fourth Amendment if the officer exceeds the scope or unreasonably prolongs the stop. *See United States v. Lewis*, 920 F.3d 483, 491 (7th Cir. 2019). "A traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket.'" *Id.* (quoting *Rodriguez v. United States*, 135 S. Ct. 1609, 1614-15 (2005)). A dog sniff of a vehicle's exterior only for illegal drugs does not violate an individual's Fourth Amendment rights, even when there is no reasonable suspicion of drugs. *See Illinois v. Caballes*, 543 U.S. 405, 410 (2005). However, such a stop becomes unlawful "if it is prolonged beyond the time reasonably required to complete the stop's original mission." *Lewis*, 920 F.3d at 491 (quoting *Rodriguez*, 135 S. Ct. at 1612).

Here, it took twenty minutes from the beginning of the traffic stop until the drug dog alerted—from 12:17 a.m. to 12:37 a.m. Whether that is a reasonable amount of time is a close question. *United States v. Garrett*, 139 F. App'x 720, 723 (7th Cir. 2005) (stating that "if Cade alerted within 5 or 10 minutes of Garrett being pulled over, that would likely be a reasonable amount of time for [the officer] to still

3

be responding to a traffic violation. But if the alert happened 19 minutes into the stop, perhaps not.").

In *United States v. Sanford*, 806 F.3d 954 (7th Cir. 2015), the amount of time that elapsed between the initial stop of the car until the dog alerted for drugs was 26 or 27 minutes. *See id*. at 957. The defendant in *Sanford* claimed the police "dawdled" in issuing the ticket. *See id*. at 959. "The trooper who had stopped the car spent several minutes chatting with a fellow trooper about sports and a euchre tournament while twice stating (then quickly correcting himself) that he wanted to wait for the dog to arrive before completing the writing of the ticket." *Id*. The court concluded that extending the stop by about eight minutes was "not an unreasonable amount of time to prolong the stop." *Id*.

"[W]hen an officer acts expeditiously but is delayed waiting for the arrival of a drug-sniffing dog or other investigative resources, a 20-minute stop could be justifiable." *United States v. Lopez*, 907 F.3d at 472, 486 (7th Cir. 2018). However, "a 15-minute stop would be too long if the investigation justifying the stop finished at the 14-minute mark." *Id*.

Part of the delay here can be attributed to the Defendant's refusal to produce his license. As a result, Officer Cowick could not scan in the identifying information from the coded bar on the back of the license. Instead, he had to manually enter the information. Part of the delay can also be attributed to Officer Cowick's failure at

the outset of the traffic stop to ask for proof of insurance, which resulted in the officer having to manually enter the information twice. The Court agrees with the magistrate judge that this was an "innocent mistake" due to the non-routine nature of the traffic stop, in that the Defendant had gotten out of his vehicle and was walking across the street until Officer Cowick directed him to return. It was not a routine stop in which the officer would walk up to the vehicle and ask the driver for his license and proof of insurance. The Court concludes that most of the time that elapsed during the traffic stop is due to these extenuating circumstances.

The magistrate judge found that Officer Cowick wanted to continue the traffic stop until Deputy Saalborn arrived with the K-9. Officer Cowick spoke with Officer Hodges privately about his belief the Defendant had methamphetamine in the truck. Moreover, he interrupted his preparation of the written warning to send messages to Sergeant Elbus telling him to take his time with the outstanding Notice of Violation, to talk to Sergeant Elbus on the phone and to send a message to Deputy Saalborn to hurry up because he would have to let Defendant go once he served the Notice of Violation. The magistrate judge found that although these activities did not take significant amounts of time, the activities delayed completing the traffic stop. "Officer Cowick may have extended the stop for a minute or two beyond the time he needed to conduct the traffic stop." Doc. No. 27, at 17.

The magistrate judge concluded that the Court "does not need to decide whether Officer Cowick unreasonably delayed completing the traffic stop because Officer Cowick had reasonable suspicion based on articulable facts that Gholston was distributing methamphetamine from the Truck." *Id*. at 18.

Upon reviewing the record, the Court concludes that the traffic stop of the Defendant was not prolonged beyond the amount of time reasonably required to complete the stop. Officer Cowick testified he never stopped working on the warning while communicating with other officers about the situation. Between 12:24 and 12:32 a.m., Officer Cowick prepared and printed the warning for failure to signal while making a right turn. At 12:33 a.m., Cowick exited his squad car and asked the Defendant if he had proof of insurance. The Defendant responded that while his girlfriend had insurance on the truck, he did not have any proof of insurance.

At 12:34, Officer Cowick returned to his squad car to write the ticket for driving without proof of insurance. Officer Cowick had to reenter all the identifying information to generate the ticket. At 12:35 a.m., Cowick told one of the other officers that it made no sense that one had to go back and start all over to write the second ticket. At 12:37 a.m., Deputy Saalborn arrived at the scene with the K-9. At 12:37 a.m., the K-9 alerted on the truck. Officer Cowick told the Defendant the dog had alerted and that they would search the truck. The officers found

methamphetamine in the truck. At 12:40 a.m., the Defendant was placed under arrest for possession of methamphetamine.

Officer Cowick testified he was still working on the insurance citation at the time the K-9 arrived. He said the citation was printing out at the time the dog alerted.

Because this was not a routine traffic stop, the Court finds that the stop was not unreasonably prolonged. It was prolonged due to an innocent mistake, that being Officer Cowick's failure to ask for both license and proof of insurance at the beginning of the stop. Another factor which contributed to the length of the stop was the Defendant's failure to produce his license, which resulted in Cowick having to manually enter the information on the citations.

Officer Cowick's communication with other officers generally related to the traffic stop. Unlike the officers in *Sanford,* Cowick was not talking about sports or a euchre tournament or otherwise dawdling. Moreover, Cowick's actions did not extend the 20-minute stop by as much as eight minutes, as in *Sanford*, which the Seventh Circuit determined was "not an unreasonable amount of time," in a stop that lasted 26 or 27 minutes. *Sanford*, 806 F.3d at 959.

Officer Cowick was completing the second citation when the dog alerted 20 minutes into the stop. Based on the particular circumstances of this case, the Court finds that the 20-minute stop was justifiable. *See Lopez*, 907 F.3d at 486. Any delay attributed to Cowick's actions was de minimis and did not unreasonably extend the

stop. Once the dog alerted, the officers had probable cause to search the vehicle. *See United States v. Bentley*, 795 F.3d 630, 635 (7th Cir. 2015).

### III. CONCLUSION

Based on the foregoing, the Court finds that Officer Cowick had probable cause to believe the Defendant committed the traffic violation. The officer did not detain the vehicle longer than reasonably necessary in order for the K-9 to arrive. Once the K-9 alerted, probable cause existed to search the vehicle. Therefore, the Court need not determine whether reasonable suspicion existed that Defendant was distributing methamphetamine from his truck.

Accordingly, the Court will adopt the magistrate judge's recommendation to deny the Defendant's motion to dismiss.

Ergo, the Court ADOPTS the Report and Recommendation [d/e 27] of United States Magistrate Judge Tom Schanzle-Haskins.

The Motion to Dismiss of Defendant Jacques Gholston [d/e 8] is DENIED.

ENTER: August 8, 2019

    FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge